## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEITH CRUMP,** | Civ. No. 2:13-5574 |
| **Plaintiff,** | (KM)(MAH) |
| **v.** | |
| **APPLIED LANDSCAPE TECHNOLOGIES et al.,** | **OPINION** |
| **Defendants.** | |

### KEVIN MCNULTY, U.S.D.J.:

This matter comes before the court on the motion of Defendants Applied Landscape Technologies, Athletic Fields of America, Paul Martino, Debra Finn Martino, and Phil Pirro, to dismiss Counts 1, 2, 3, 4 and 7 of the First Amended Complaint. (Docket No. 8). For the reasons set forth below, the motion is denied as to Counts 1-4 and granted as to Count 7.

### I.   BACKGROUND

The First Amended Complaint ("FAC") seeks equitable and monetary relief for alleged violations of: (1) the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 19:5-1, for disability discrimination, race discrimination, and retaliation; (2) the New Jersey Worker's Compensation Statute, N.J.S.A. 34:15-1; (3) the New Jersey Prevailing Wage Act ("PWA"), N.J.S.A. 34:11-56.25; (4) the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201; and (5) common law retaliation, unjust enrichment, quantum meruit, breach of express and implied contract, and breach of implied covenant of good faith and fair dealing. FAC ¶ 1.

As I must, I take the facts alleged in the FAC to be true solely for purposes of this motion to dismiss.

## A. Parties

The plaintiff, Keith Crump, was a driver and heavy equipment engineer for the Defendants in Montville, New Jersey. FAC ¶ 4. He obtained his Class A Commercial license for tractors and trailers in 1985 and maintained it at all times relevant to the FAC. *Id.* ¶ 5.

Applied Landscape Technologies ("ALT") is a for-profit general contractor in New Jersey that builds synthetic turf fields for the public and private sectors. FAC ¶¶ 6-9. Athletic Fields of America ("AFA") provides installation and maintenance of natural and artificial turf fields and playing surfaces for the public and private sector. *Id.* ¶¶ 9-10. ALT and AFA jointly employed Crump for services in New York and New Jersey. *Id.* ¶ 11. Both ALT and AFA are located in Montville, New Jersey. *Id.* ¶ 16. XYZ Corp. 1-10 are unknown affiliated corporations or entities who have liability for the claims set forth in the FAC. *Id.* ¶ 25.

At all relevant times, Paul Martino was the President and Owner of ALT and Debra Finn Martino was the President and Owner of AFA. *Id.* ¶¶ 12, 13. At all relevant times Phil Pirro was the Vice President of ALT and AFA. *Id.* ¶ 14. John Does 1-10 are currently unknown senior management level employees. *Id.* ¶ 24.

AFA administered the payroll functions for both AFA and ALT. ALT administered human resources functions for employees of both companies, including Crump. *Id.* ¶ 17. AFA and ALT were responsible for implementing, enforcing, publicizing, and distributing an Anti-Discrimination policy for their employees in New Jersey, and for creating and maintaining a discrimination-free workplace. *Id.* ¶¶ 19-20. Defendants Martino, Finn Martino, and Pirro were senior management employees who supervised Crump and exercised control over the workplace. *Id.* ¶ 22.

## B. Factual Allegations

Crump began working for the Defendants as a truck driver and heavy equipment operating engineer for the Defendants in approximately July 2008. He earned a salary of $30 per hour as a non-exempt employee. FAC ¶¶ 26, 38. In July 2010, his salary was increased to $31 per hour. *Id.* ¶ 27. He worked on a seasonal basis from March through December. *Id.* ¶ 43. Crump often worked Monday through Saturday in shifts of ten hours or more per day, regularly earning at least 20 hours of overtime per week. *Id.* ¶¶ 53-54. Crump alleges that he was not paid overtime wages for all the hours he worked. *Id.* ¶ 55. His

2

responsibilities included transporting equipment to various job sites; running heavy equipment on site including front end loaders, backhoe, and bulldozers; removal of construction debris; breaking up and removing asphalt millings; and delivering hot asphalt to the job site for paving and Dense Graded Aggregate ("DGA") base material. *Id.* ¶ 39.

Crump had no supervisory, executive, or administrative role while he was employed by the Defendants. *Id.* ¶¶ 29-30. He directly reported to the foremen at each worksite, who each reported to Martino, Finn Martino, and Pirro. *Id.* ¶ 40. Crump did not regularly direct the work of other employees. *Id.* ¶ 32. He did not have the authority to hire or fire other employees. *Id.* ¶ 34. He did not generally exercise independent discretion or judgment in his position, nor did he have a substantive role in management or general business operations. *Id.* ¶¶ 36-37.

During his employment, Crump was almost exclusively employed on "public works" in New Jersey and New York as defined by the New Jersey Prevailing Wage Act and Section 220 of the New York State Labor Law. *Id.* ¶ 44. He alleges that his duties and job description met the definition of "Truck Driver and Operating Engineer" pursuant to New Jersey Department of Labor and Workforce Development prevailing wage regulations, and that he was entitled to the applicable prevailing wage. *Id.* ¶¶ 45-46. Defendants failed to pay him the applicable New Jersey and New York prevailing wage rates. *Id.* ¶¶ 47-48.

At a job site, a New Jersey Department of Labor ("NJDOL") official informed Crump that he did not believe Crump was being paid proper wages. *Id.* ¶ 49. Pirro called an employee meeting and demanded information about the employees' conversations with the NJDOL. *Id.* ¶ 50. Pirro denied that the employees were underpaid, and said that if they were entitled to prevailing wages they would be paid prevailing wages. *Id.* ¶¶ 51-52.

The applicable prevailing wage rate in New York and New Jersey for the public work services Crump performed as a truck driver and operating engineer averaged approximately $60 per hour for regular ("straight") hours and $90 per hour for overtime. *Id.* ¶ 55. Crump alleges that Defendants paid him far less than the prevailing wages for the regular and overtime hours he worked. In total, he alleges that Defendants failed to pay him $220,577 in additional wages between 2008 and 2010. *Id.* ¶ 69.

1. In 2008, Crump estimates that he worked 860 hours of straight time and 430 hours of overtime. Defendants paid him $40,000. He estimates that he should have been paid $90,320 in prevailing wages: $51,500 for regular hours and $38,700 in overtime. Therefore, he estimates that Defendants failed to pay him $50,300 in additional wages. *Id.* ¶¶ 65-68.

2. In 2009, Crump worked 1,395 hours of straight time and 682.5 hours of overtime. Defendants paid him $59,004.94. He estimates that at the prevailing wage, he should have been paid $143,325 in prevailing wages: $81,900 for regular hours and $61,425 for overtime. Therefore Defendants failed to pay Crump an additional $93,320. *Id.* ¶¶ 61-64.

3. In 2010, Crump worked 1222 hours of straight time and estimated that he worked 611 hours of overtime. Defendants paid him $51,353. He estimates that he should have been paid $128,310 in prevailing wages: $73,320 for regular hours and $54,990 for overtime. Therefore, Defendants failed to pay $76,957 in additional wages. *Id.* ¶¶ 56-60.

On June 6, 2009, Crump was in a car accident and was hospitalized for several days in Montclair, New Jersey. *Id.* ¶ 70. He informed Defendants' employee, Dana Burzak, that he was injured and she requested a doctor's note. *Id.* ¶ ¶ 71-72. Crump was diagnosed with severe central cord impingement and was evaluated by a neurosurgeon who placed him on medical leave for a "few weeks" subject to further evaluation. *Id.* ¶¶ 73-74. After he was released from the hospital, Crump suffered an adverse reaction to a prescribed steroid medication, experienced a diabetic coma, and lost 45 pounds. *Id.* ¶ 76. He was then readmitted to the hospital on July 1, 2009 for three to four days. *Id.* ¶ 77. On July 29, 2009, he was medically cleared to return to work on August 10, 2009. *Id.* ¶ 78.

Crump returned to work on August 10, 3009. *Id.* ¶ 79. On or about August 13, 2009, Pirro approached Crump and asked, as a condition of his return to work, that he sign a release and waiver of all claims related to any injuries while working for Defendants, and expressly waiving all rights to workers compensation. *Id.* ¶ 80. Crump objected to signing the release. *Id.* ¶ 81. Shortly thereafter, Crump also informed Martino of his objection and showed him the release. *Id.* ¶ 82. Crump alleges that Martino said "he didn't

4

want to be stuck with a workers compensation claim and paying someone benefits for life." *Id.* ¶ 84. When Crump repeated his objection, Martino consented to Crump's continuing to work without signing the release, subject to receipt of a letter from his doctor more specifically stating that he was allowed to return to work as a "truck/heavy equipment operator." *Id.* ¶¶ 85-86.

To Crump's knowledge, Pirro was not given any warning or discipline as a result of his attempt to make Crump sign the waiver. *Id.* ¶¶ 87-89. On August 31, 2009, Crump's physician provided the requested medical clearance letter stating that Crump was cleared to return to work as a heavy equipment operator and driver. *Id.* ¶ 90. Crump then worked for the Defendants through the rest of the season until about December of 2009. He returned at the start of the following season in or about April 2010, and continued to work until November 4, 2010, when he was involved in an accident at work. *Id.* ¶¶ 91-92.

On that date, Crump was directed by employee Chris Ebner to back a 3-wheeled forklift machine off a trailer with two ramps, without following the "proper procedure" of hooking the machine up to a truck specifically designed for such purpose. *Id.* ¶ 93. Crump attempted to create a makeshift third ramp for the third wheel of the forklift, but while he was in the process of backing the machine off the trailer, the brakes failed and it flipped over with him inside. *Id.* ¶ 94. Immediately thereafter, Crump experienced severe left shoulder pain. *Id.* ¶¶ 95-97.

Crump's physician referred him to an orthopedic specialist and surgeon and placed him on leave from work for approximately three weeks. *Id.* ¶ 97. Crump provided Defendants with a physician's note. *Id.* ¶ 98. Pirro told Crump not to file any workers compensation claim, and said that he should instead provide Pirro with any bills, which the company would pay for "out of pocket." *Id.* ¶ 99. Crump did not respond; he believed at the time that objecting to Pirro's demand would result in termination. *Id.* ¶ 100. Subsequently, Crump was diagnosed with a torn rotator cuff in his left shoulder, and informed that the injury required surgery. *Id.* ¶¶ 101, 102.

Crump alleges that he was unable to pay his medical bills and that the surgery was delayed as a result of Defendants' actions to prevent him from filing a workers compensation claim. *Id.* ¶ 103. Crump wrote to the Defendants to request his accrued vacation pay, but Defendants denied his request because he was "on workers compensation." *Id.* ¶ 104. Crump then consulted with the law firm of Wiener & Mazzei and filed a workers compensation claim for the November 4 accident. *Id.* ¶ 105. He received surgery on December 28,

2010, as well as additional follow-up care, including a "shoulder manipulation" performed under anesthesia on May 13, 2011. *Id.* ¶¶ 106-107. On September 21, 2001, he was medically cleared to return to work as of September 26, 2011. *Id.* ¶ 109.

Crump made several attempts to contact Defendants, which were not successful until Crump reached Martino by phone on September 26, 2011. *Id.* ¶¶ 110-114. Although September was usually a busy time of the year, Martino told Crump there was no work and said "someone is suing me for $42,000. I have to figure out who that is, call me next week." *Id.* ¶¶ 115-116. Martino refused to engage in any further conversation and hung up. *Id.* ¶ 117.

Crump also alleges that in addition to the above described treatment, Defendants engaged in a "pattern and practice of racial discrimination that targeted and had a disparate impact on African American employees such as Crump." *Id.* ¶¶ 118-119. Defendants "made clear" their preference for non-African-American employees "in the way they were treated and talked to." *Id.* ¶ 120. Crump alleges that a family member of an employee came into his work area in 2009 and said something to the effect of: "By the way, I don't like black people." *Id.* ¶ 127.   Crump alleges that only two other African-American employees worked for Defendants when he started in 2008—one of the two employees was terminated shortly thereafter, and the other left the company. *Id.* ¶ 121.   Defendants did not hire any other African-American employees during Crump's employment, and Crump alleges he was replaced by a Caucasian. *Id.* ¶¶ 122-123. At the time of the FAC's filing, Defendants did not employ any African-Americans. *Id.* ¶ 124.

### C. Procedural History

Crump filed his original complaint on August 7, 2013 in New Jersey state court in Essex County. *See* Docket No. 1. Defendants removed the case to federal court on September 19, 2013. *Id.* A consent order permitting Plaintiff to file an Amended Complaint was so-ordered on October 10, 2013. (Docket No. 6).

Crump filed the First Amended Complaint ("FAC") on October 24, 2013. (Docket No. 7). The FAC contains fourteen counts: disability/handicap discrimination under the LAD (Count 1); retaliation under the LAD (Count 2); disparate treatment race discrimination under the LAD (Counts 3 and 4); a violation of the New Jersey Worker's Compensation Statute (Count 5); a violation of the PWA (Count 6); a violation of the New York State Labor Law § 220 (Count 7); a violation of the FLSA (Count 8); common law retaliation

(Count 9); unjust enrichment (Count 10); quantum meruit (Count 11); breach of express contract (Count 12); breach of the implied covenants of good faith and fair dealing (Count 13); and breach of implied contract (Count 14). Defendants filed this motion to dismiss on November 7, 2013. (Docket No. 8).

## II. DISCUSSION

Defendants move to dismiss Counts 1, 2, 3, 4 and 7 of the FAC: Counts 1-4 because they are time-barred, and Count 7 because Plaintiff failed to exhaust administrative remedies. Def. Br. (Docket No. 8-1) at 1-2.

The Court has federal-question jurisdiction over this case pursuant to 18 U.S.C. § 1331 because Count 8 asserts a claim under a federal statute, the FLSA. Setting aside Count 7 (discussed below), the Court has supplemental jurisdiction over the accompanying state law claims in the FAC pursuant to 18 U.S.C. § 1367.

### A. Claims Under the LAD (Counts 1-4)

Crump's FAC alleges four counts under the LAD for disability discrimination (Count 1), retaliation (Count 2), and race discrimination (Counts 3 and 4). Defendants assert that these four counts are time-barred and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.[1] Def. Br. at 4.

To state a valid claim for relief, the Complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed R. Civ. P. 8(a). The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in favor of the Plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

---

[1]     Defendants make a more elaborate Rule 12(b)(6) argument in their reply brief regarding the FAC's allegations of discrimination. *See* Def. Reply Br. (Docket No. 15) at 2. This argument was not adequately addressed in their moving brief, but, regardless, it is of no consequence. As discussed below, I find that the FAC contains sufficient allegations to sustain the LAD claims in Counts 1-4.

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

Under the law of this Circuit, a limitations defense may be raised on a motion under Rule 12(b)(6) only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. United States Veterans' Administration Hospital*, 514 F.2d 1092, 1094 (3d Cir. 1975)). Claims brought under the LAD are subject to a two-year statute of limitations. *Montells v. Haynes*, 627 A.2d 654, 655, 133 N.J. 282, 286 (1993).

Here, the FAC identifies the time period for the LAD claims. The FAC establishes the last date that Crump worked for the Defendants, as well as the date of his last contact with Defendants. FAC ¶¶ 92-93, 114-116. The last day Crump worked for Defendants was November 4, 2010, when he was injured at work. *Id.* ¶ 92. Subsequently, he received treatment for his injury and was placed on medical leave by his physician until September 26, 2011. *Id.* ¶¶ 106-109. During this time, Crump alleges that Defendants warned him not to file a workers compensation claim and rejected his claim for vacation pay. *Id.* ¶¶ 99, 104. The FAC indicates that Crump did not work for Defendants after his injury, and that he last spoke with any of the Defendants on September 26, 2011 when he told Martino that he was cleared to return to work. *Id.* ¶¶ 114-116. During that conversation, Martino told Crump that no work was available and to call him next week. *Id.* ¶ 116. The FAC does not contain any allegations indicating that Crump spoke with Defendants after that date, or that he attempted to return to work on another occasion.

Defendants assume that Crump's employment terminated on November 4, 2010, and that his single conversation with Martino in September 2011 did not amount to a re-application or re-establishment of an employment relationship. Def. Br. at 5-6. Defendants also argue that no discriminatory acts alleged in the FAC occurred after Crump was injured except for the "discrete" conversation between Crump and Martino. *Id.* at 6-7. Hence, Defendants contend that the statute began to run on Crump's last day of work (and the date of his injury), November 4, 2010 and thus expired on November 4, 2012. Def. Br. at 5. Crump originally filed his complaint (Docket No. 1), including the four claims under the LAD, in Superior Court, Essex County on August 7,

2013. By Defendants' reckoning, that was some nine months after the limitations period expired.

In construing the complaint, however, I must draw reasonable inferences in favor of the Plaintiff. *Phillips,* 515 F.3d at 231. The FAC can logically be construed as alleging that Crump continued to be an employee of the Defendants through his medical leave, including when he called Martino to inform him he could return to work and Martino told him that he could not return. Opp. Br. (Docket No. 14) at 2. In fact, Crump had previously returned from his 2009 medical leave without issue. FAC ¶¶ 78-79. Crump's continued employment by the Defendants provides a factual basis for all four of his LAD claims and establishes that the statute of limitations did not begin to run until September 26, 2011.

Alternatively, even if Crump temporarily left the Defendants' employment in 2010, Defendants' failure to rehire him in 2011 could also establish a basis for his LAD claims. Defendants' failure to rehire Crump on September 26, 2013 constitutes an adverse employment action giving rise to his retaliation claim. *See Barbara v. DiMartino,* 702 A.2d 1370, 1379, 305 N.J. Super 617, 633-34 (App. Div. 1997).[2] Moreover, the FAC alleges that after Crump was injured on November 4, 2010, he continued to engage with Defendants regarding his injury. He provided Defendants with a physician's note and Defendants directed him not to file a workers compensation claim. FAC ¶¶ 98-99. Crump also alleges that he requested and was denied vacation pay while he was unable to work. *Id.* ¶ 104. In this context, a failure to re-hire Crump was not the one-off event that Defendants imagine, but part of a pattern of discrimination. *See Bolinger v. Bell Atl.,* 330 N.J. Super. 300, 306-07 (App. Div. 2000) (discussing continuing violation theory).

In sum, the FAC contains more than sufficient allegations to support the view that Crump's employment-based claims ripened on September 26, 2011. That date would place the two-year statute of limitation's expiration at September 26, 2013. Crump's LAD claims were first asserted in his state court complaint filed August 7, 2012. Accordingly, the Defendants' motion to dismiss

---

[2]     Defendants argue that Crump fails to satisfy *Barbera* because the FAC does not establish that he actually applied for a position, or that he was rejected. Def. Br. at 6. However, Crump alleges sufficient facts to show that he was either still employed by Defendants during his medical leave, or that he sought to return to his position when he was medically cleared to work and Defendants rejected him. On a 12(b)(6) motion, such allegations are enough.

Counts 1-4 of the Complaint on the basis of the LAD's statute of limitations is denied.

### B. Violation of New York State Labor Law § 220 (Count 7)

Defendants assert that Crump's claim under the New York State Labor Law ("NYLL") is barred because Crump failed to exhaust his administrative remedies before filing the original complaint or the FAC. Def. Br. at 7. Defendants also argue that, as to this claim, this federal court lacks jurisdiction, which is vested solely in New York State courts under New York law. *Id.* at 8.

I first address Defendants' jurisdictional argument, which if applicable, would preclude the Court from adjudicating Crump's NYLL claim. A challenge to the Court's jurisdiction is considered under Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) challenges may be either facial or factual attacks. See 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. For the purposes of this motion to dismiss, the Defendants' argument—which challenges the authority of the Court to hear the NYLL claim—will be treated as a facial attack.

Section 220 of the NYLL provides a private right of action to an injured party once an administrative determination has been made. *See* N.Y. Lab. Law. 220(8); *P&T Iron Works v. Talisman Contracting Co., Inc.*, 18 A.D. 3d 527, 528 (N.Y. App. Div. 2d Dep't 2005). The injured party may seek judicial review of such an administrative determination pursuant to Article 78 of the N.Y. C.P.L.R. *Id.*

Here, Defendants argue that no administrative determination has been made as to Crump's claim. Def. Br. at 8. Crump does not contest this. Opp. Br. at 23. And even if such a determination had been made, this Court would have no jurisdiction to review it. Review under Article 78 is expressly limited to the New York Supreme Court in the county where the material events took place. N.Y. C.P.L.R. 7804(b). *See also Brown v. Tomcat Electrical Sec., Inc.*, Civ. No. 3-

10

5175 (FB), 2007 WL 2461823 at * 3 (E.D.N.Y. Aug. 27, 2007); *Blatch ex rel. Clay v. Hernandez*, 360 F.Supp.2d 595, 637 (S.D.N.Y. 2005). New York State has not empowered the federal courts to review a claim under the NYLL, and therefore this Court lacks subject matter jurisdiction of Crump's NYLL claim. Count 7 of the FAC will be dismissed.[3]

## III.   CONCLUSION

For the reasons set forth in this Opinion, the Defendants' motion to dismiss is **DENIED** as to the LAD violations alleged in Counts 1, 2, 3, and 4 of the FAC, and **GRANTED** as to the NYLL violation alleged in Count 7.

An Order will be entered in accordance with this Opinion.

Dated:  May 15, 2014

**Hon. Kevin McNulty**
**United States District Judge**

---

[3]     Plaintiff argues in his Opposition that the Court should apply New Jersey law to his New York State Law claim. Opp. at 23-24. This only confuses matters, and to no purpose. Crump's FAC contains a multitude of New Jersey state law claims that will proceed. The Court has no power to review his NYLL claim, as to which he has in any event failed to exhaust administrative remedies.